**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MELISSA FAHY,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-7775** |
| | : | |
| **HC SALON HOLDINGS INC.,** | : | |
| **Defendant.** | : | |

**MEMORANDUM**

**PEREZ, J.** **OCTOBER 27, 2026**

Plaintiff Melissa Fahy initiated this *pro se* civil action alleging claims of employment discrimination against HC Salon Holdings Inc. ("HCSH"). Fahy also filed a motion to proceed *in forma pauperis*, as well as a motion for appointment of counsel. For the following reasons, the Court will grant Fahy leave to proceed *in forma pauperis* and dismiss the Complaint.

## I. FACTUAL ALLEGATIONS[1]

Fahy used the court's form employment discrimination complaint, with a handwritten supplement, to plead her claims. By checking the appropriate locations on the form, Fahy indicates that she brings claims of race discrimination under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e-2000e-17 ("Title VII"), and age discrimination under the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-34 ("ADEA"), as

[1] The following allegations are taken from Fahy's Complaint (ECF No. 2 ("Compl.")), and documents attached to the Complaint. The Court adopts the sequential pagination supplied by the CM/ECF docketing system to the filings in this case.

well as discrimination claims under the Pennsylvania Human Relations Act ("PHRA"), and that she seeks injunctive relief and damages.[2] (Compl. at 2, 4, 13.)

Fahy indicates on the form that she is Black and was over forty years old when she was allegedly discriminated against. (*Id.* at 4.) The discriminatory conduct of which Fahy complains includes – "termination of my employment," "unequal terms and conditions of my employment," and "retaliation." (*Id.* at 3-4.)

Fahy alleges that, on an unspecified date, a "white customer came in looking to receive a blowout."[3] (*Id.* at 4.) Fahy started the service by shampooing the client's hair, during which the client asked Fahy to use her nails to scratch her scalp. (*Id.*) When Fahy told the client that she could not do so because she could accidentally harm her, the client questioned whether Fahy knew what she was doing. (*Id.*) Fahy explained that state regulations prohibited her from using her nails as requested, and she did not want to harm the client's scalp. (*Id.*) The client continued to pressure Fahy to do as she asked, which made Fahy feel demeaned and humiliated. (*Id.* at 4-5.) A coworker overheard Fahy's conversation with the client and offered to take over the service. (*Id.* at 5.) The client continued to speak unfavorably about Fahy to the coworker. (*Id.*) Fahy alleges as follows: "I felt she was just being rude and nasty at that point I no longer want to service anyone who was deliberately humiliating me and insulting me I denied finishing the service." (*Id.*)

---

[2] Fahy attached to her Complaint a copy of the Equal Employment Opportunity Commission's Determination and Notice of Rights letter dated July 9, 2026. (*See* ECF No. 2-1 at 3.)

[3] In the portion of the form complaint prompting the plaintiff to indicate when the alleged discriminatory acts occurred or began, Fahy stated November 11, 2025. (*See* Compl. at 4.) However, in the body of the Complaint, Fahy provides only limited information as to when each of the events occurred. (*See id.* at 4-11.)

After her shift, Fahy was called by a human resources representative, Mr. Alvarez, who informed Fahy that she "was being let go because [she] refused a client." (*Id.*) Fahy explained that the client was verbally abusive and wanted Fahy to use her nails to scratch her scalp which is against state regulations. (*Id.*) When Fahy asked Mr. Alvarez whether she had the right to refuse a client, he told Fahy that she should have finished the service and then reached out to HR. (*Id.* at 6.) Fahy insisted that she was entitled to refuse service to a verbally abusive client who requested that Fahy perform a service that was against state regulations, requested that she not be fired, and asked Mr. Alvarez speak with "the owner" to give her another chance since she had just begun working there. (*Id.*) A "few days" later, Mr. Alvarez contacted Fahy and informed her that she would not be fired but would be transferred to another location. (*Id.*)

When Fahy began work at the new location, she noticed that her hours were reduced and she was told she "had to do some training for career something." (*Id.* at 7.) On December 2, Fahy was brought into the break room to meet with "Shift Lead Megan" and "District Manager Susan." (*Id.*) Fahy alleges that they "were trying to get [her] to sign a conf[e]rence contract" which stated that Fahy had refused the client and which listed "all these policy violations that did [not] even match what occurred." (*Id.*) Fahy was told that if she violated these policies again, she would be fired. (*Id.*) Fahy acknowledged refusing the client but denied committing the other violations. (*Id.*) Fahy was told "oh we gotta put something down because what occurred is not actually a policy." (*Id.*) Fahy questioned why she was being "so aggressively punished for [the] first time doing anything since being hired." (*Id.*) Fahy refused to sign the document because it listed violations that she did not commit but indicated that she would sign the document if it were rewritten without those violations. (*Id.* at 8.) She also asked why she was not receiving the same hours "agreed to when [she] was hired" but did not receive an answer. (*Id.*) Fahy was told

that they could not rewrite the document and that Fahy would have to reach out to HR if she refused to sign it. (*Id.*)

Fahy states that she had been told "by all management" that no one is permitted to leave their equipment at a station and that there are no assigned stations. (*Id.* at 9.) Fahy "noticed that other coworkers' conversations can be [un]professional" and "always [chose] a station away from the other stylist[s]" so that her clients were not exposed to those conversations. (*Id.*) On December 18th or 19th when Fahy arrived for work, she chose a station that had "some items on it" and moved the items to the next station "because the person who they belong[ed] to was not there and we are not allowed to leave our things overnight and there are no assigned stations." (*Id.*) While Fahy was servicing a client, a coworker approached her and asked why Fahy had moved her items. (*Id.*) Fahy responded that the coworker was not there or clocked-in, there are no assigned stations, and she did not break anything. (*Id.*) According to Fahy, the coworker was "mad and called the manager." (*Id.*) Fahy finished her shift and left for the day. (*Id.*)

When Fahy returned to work at some unspecified time, she was told "by staff" that she could not work and that HR would contact her. (*Id.* at 10.) Fahy attempted to call HR from the salon but was unable to reach anyone. (*Id.*) She was told to take her hair supplies with her. (*Id.*)

On December 23, 2025, Fahy was fired by Susan, the District Manager, for moving her coworker's items, which was against company policy. (*Id.*) Fahy questioned how that act could be in violation of company policy when stylists are not permitted to leave their items in a station and there are no assigned stations. (*Id.*) Fahy was told the policy is "in the handbook." (*Id.* at 11.)

Fahy "also remember[ed] having a conversation with two other white coworkers about another employee who was much younger than [Fahy] her name was Dominique and the

manager Brianna and Kelly were telling [Fahy] how Dominique comes to work, don't clean up and cherry pick what clients she wants to service." (*Id.*) Fahy witnessed her "not helping with sidework." (*Id.*) She asserts that Dominique was not fired, but "when I refused a client I was fired." (*Id.*) Fahy contends that this constitutes retaliation. (*Id.*)

## II. STANDARD OF REVIEW

Because Fahy appears to be unable to pay the filing fee in this matter, the Court will grant her leave to proceed *in forma pauperis*. Accordingly, the Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B), which requires the Court to dismiss the Complaint if, *inter alia*, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At the screening stage, the Court will accept the facts alleged in a *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

The Court construes the allegations of a *pro se* litigant liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant also "cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245).

## III. DISCUSSION

Federal law "proscribe[s] discrimination in employment based on several personal characteristics" including race and age. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing, *inter alia*, 42 U.S.C. § 2000e-2(a)); *Fowler v. AT&T, Inc.*, 19 F.4th 292, 298 (3d Cir. 2021) (claims under the ADEA align with claims under Title VII). The ADEA prohibits discrimination against individuals who are over forty years of age. *See* 29 U.S.C. § 631(a); *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). Claims under the PHRA are interpreted coextensively with their federal counterparts. *Atkinson v. Lafayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006). Based on the allegations in the Complaint, the Court understands Fahy to bring claims against HCSH for discriminatory discharge and retaliation. Even under a liberal reading of the Complaint, however, Fahy has failed to allege a plausible claim.

### A. Discriminatory Discharge

The Court understands Fahy to allege that she was discriminated against on the basis of her race and age when she was terminated. Generally, a plaintiff in an employment discrimination action may establish a *prima facie* case of discrimination either through direct

evidence, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985), or in the absence of direct evidence of disparate treatment, based on circumstantial evidence through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. While "the elements of that prima facie case will vary with different factual situations, . . . at root, the plaintiff's initial burden is to show adverse actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under Title VII." *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 276 (3d Cir. 2024) (citation modified).

In the absence of direct evidence of discrimination, a plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Qin v. Vertex, Inc.*, 100 F.4th 458, 472-73 (3d Cir. 2024) (same). With regard to the fourth prong, a plaintiff can establish an inference of discrimination by demonstrating that similarly-situated persons outside the protected class were treated more favorably. *Qin*, 100 F.4th at 474; *see also Fuentes v. Perskie*, 32 F.3d 759, 764-65 (3d Cir. 1994) (describing methods of establishing pretext). The plaintiff must show, however, that the other employee was "similarly situated in all material respects." *Qin*, 1000 F.4th at 474 (quoting *In re Trib. Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018)). In other words, the plaintiff must show "that the other employee's acts were of comparable seriousness to his own infraction." *Anderson v. Haverford College*, 868 F. Supp. 741, 745 (E.D. Pa. 1994) (quotation marks and alteration omitted) (quoting *Lanear v. Safeway Grocery*, 843 F.2d 298, 301 (8th Cir. 1988)); *see also McDonnell Douglas*, 411 U.S. at 804 (considering whether comparators were "involved in acts . . . of comparable seriousness to"

the plaintiff's acts); *In re Trib. Media Co.*, 902 F.3d at 403 (rejecting a comparator because the plaintiff did not show that the comparator's conduct "involved the same degree of yelling, profanity, and disruption").

To *plead* a claim under Title VII, however, a plaintiff need not allege each element necessary to establish a *prima facie* case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."), and *id.* at 515 ("[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination."). Rather, at the pleading stage, a plaintiff must allege facts that provide fair notice of a plaintiff's claims and demonstrate a plausible right to relief. *See Twombly*, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); Fed. R. Civ. P. 8(a)(2) (requiring that complaints merely contain a "short and plain statement showing that the pleader is entitled to relief"). Thus, to pass statutory screening under 28 U.S.C. § 1915(e)(2)(B)(ii) or to survive a motion to dismiss, the complaint must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Fowler v. UMPC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788-89 (3d Cir. 2016) ("Instead of requiring a prima facie case, the post-*Twombly* pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." (citations omitted)).[4]

---

[4] The Third Circuit Court of Appeals explained this analysis in the context of an age discrimination claim:

> Martinez's complaint must allege enough facts to show that he has a plausible entitlement to relief. To understand that concept in the context of age-

Applying this framework to Fahy's allegations,[5] she must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of discriminatory discharge. Fahy states that she is Black and over forty years of age. (Compl. at 4.) She alleges that she refused a client a service because the client asked her to scratch her scalp with her fingernails in violation of state regulations, and because the client was verbally abusive toward Fahy. (*Id.* at 4-5.) Fahy's employment was initially terminated for refusing the client a service. (*Id.* at 5.) Although Fahy states that the client at issue was white, Fahy has not presented any facts plausibly alleging that Fahy's race or age were a motivating or determinative factor in HCSH's employment decision at that time. In any event, as described in the Complaint, the termination decision was revoked and Fahy was permitted to continue her employment at another location. (*Id.* at 6-7.) Fahy's employment was later terminated, but she was told at that time that she was being fired because she moved a coworker's items. (*Id.* 10.) Fahy alleges that she "remembers having a conversation with [two] other white coworkers" about another employee, Dominique, who was "much younger" than Fahy,[6] and who failed to clean up, "cherry-picked" which clients she serviced, and failed to help with "sidework." (*Id.* at 11.) Fahy contends that she was fired for refusing a client, but Dominique was not fired for her actions. (*Id.*)

---

> discrimination claims, we must work backwards from the endgame. So we first discuss what facts the plaintiff must ultimately prove at trial to win, then what he must show to survive summary judgment, and finally what he must allege to avoid dismissal.

*Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021).

[5] The Complaint does not include any allegations of direct discrimination.

[6] While Fahy alleges that Dominique was "much younger" than she, Fahy does not state Dominique's age or race. (*See* Compl. at 11.)

In so alleging, Fahy presents no facts to plausibly suggest that she was terminated under circumstances that could give rise to an inference of intentional race or age discrimination. While Fahy contends that she suffered discrimination on the basis of her race and age, she has not plausibly alleged that race or age were involved in any way in any of HCSH's employment decisions, including the determination to terminate her employment. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) ("The central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." (citation modified)). Putting aside that it is unclear whether "Dominique," although alleged to be younger than Fahy, was outside the protected age class, Fahy has not plausibly alleged that she was similarly situated. Fahy does not allege that Dominique was treated more favorably after engaging in the same actions, either refusing a client or moving a coworker's items. While Fahy need not allege each element of the *prima facie* case at this stage of the litigation, her allegations of discriminatory discharge are wholly unsupported and conclusory. Further, Fahy fails to allege any facts that would raise a reasonable expectation that discovery would uncover evidence that a discriminatory reason was more likely than not a motivating or determinative cause in any of HCSH's employment decisions.

None of the allegations she presents in the Complaint reasonably raise an inference that the termination, or any of HCSH's employment determinations, was linked to Fahy's race or age. Accordingly, Fahy's discriminatory discharge claim will be dismissed. *See, e.g., Peebles v. Chain IQ Americas Inc.*, No. 25-1419, 2026 WL 281174, at *2 (3d Cir. Feb. 3, 2026) (affirming dismissal of Title VII claim where plaintiff "did not present factual allegations that plausibly support the legal conclusions that Title VII . . . ultimately require[s]" because plaintiff failed to link termination decision to plaintiff's race); *Jean-Pierre v. Schwers*, 682 F. App'x 145, 147 (3d

Cir. 2017) (*per curiam*) (affirming dismissal of race discrimination claim because plaintiff failed to plead facts that would plausibly support an inference of intentional discrimination).

**B. Retaliation**

Title VII also prohibits an employer from retaliating against an employee for opposing any act made unlawful by the employment discrimination statutes, or because she made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the employment discrimination statutes. *See* 42 U.S.C. § 2000e-3(a); *Allstate Ins. Co.*, 778 F.3d at 449. A plaintiff seeking to state a claim for retaliation under Title VII must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action. *See Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022); *see also Connelly*, 809 F.3d at 789.

Title VII protects "those who oppose discrimination made unlawful by Title VII." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). Only complaints about discrimination prohibited by Title VII—that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2—constitute "protected activity." *Davis v. City of Newark*, 417 F. App'x 201, 202-03 (3d Cir. 2011) (*per curiam*) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995)). "Thus, for a complaint to amount to 'protected activity,' it must implicate an employment practice made illegal by Title VII." *Id.* at 203 (citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). A general complaint about unfair treatment does not suffice. *Id.* (citing *Barber*, 68 F.3d at 702). Although Fahy asserts that HCSH retaliated against her, (*see* Compl. at 11), Fahy does not

plausibly allege that she engaged in any protected activity. She does not allege that she opposed any act made unlawful by the employment discrimination statutes.

"Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly*, 809 F.3d at 786. Fahy's allegations of retaliation are speculative and not plausible. *See Twombly*, 550 U.S. 544, 555 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); *see also Martinez*, 986 F.3d at 266 ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue."). Accordingly, Fahy's retaliation claims will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Fahy leave to proceed *in forma pauperis* and dismiss the Complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Even under a liberal construction of the Complaint and reading it as a whole, Fahy has failed to allege a plausible basis for any claim. Thus, under the circumstances of this case, amendment would be futile. Additionally, Fahy's request for appointment of counsel (ECF No. 3) will be denied as moot. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (stating that the court should first determine whether a plaintiff's lawsuit has a legal basis when determining whether appointment of counsel is appropriate).

An appropriate order follows dismissing this case, which shall be entered separately. *See* Fed. R. Civ. P. 58(a).

**BY THE COURT:**

**HON. MIA R. PEREZ**